UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**WANDA BEST,**
        **Plaintiff**

**v.**               **Civil Action No.**
                  **3:06CV265-J**

**MICHAEL J. ASTRUE, Commisioner,**
 **Social Security Administration,**
        **Defendant**

## MEMORANDUM OPINION

  This case presents plaintiff Wanda Best's challenge to the decision of the Commissioner denying her claim to Supplemental Security Income payments and Disability Insurance Benefits. After examining the materials of record, the arguments of the parties and the applicable authorities, the Court is of the opinion that the decision of the Commissioner should be affirmed.

  Ms. Best filed her application in January of 2003, alleging that she had been unable to engage in any substantial gainful employment since October of 2000. After a hearing, the Administrative Law Judge ("ALJ") determined that Ms. Best's obesity, depression and anxiety were severe impairments that prevented her from performing any of her past relevant work. The ALJ further found, however, that she retained the residual functional capacity for performing a significant range of sedentary work.

  If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm. Studaway v. Secretary of HHS, 815 F.2d 1074, 1076 (6th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." Jones v. Secretary, 945 F.2d 1365 (6th Cir. 1991). The Court's obligation to affirm in such a case exists regardless of whether we would resolve the disputed issues of fact differently, and regardless of whether there exists substantial evidence to support the opposite conclusion. Stanley v. Secretary, 39 F.3d 115 (6th Cir. 1994), Tyra v. Secretary, 896 F.2d 1024 (6th Cir. 1990), Mullen v Brown, 800 F.2d 535, 545 (6th Cir. 1986).

Ms. Best argues that substantial evidence cannot be found to support the decision because the ALJ did not properly evaluate the effects of her obesity. Since 1999, obesity has not been addressed separately in Appendix 1 of 20 CFR Part 404, Subpart P (hereinafter, "the Listings"), but it may nonetheless be disabling, and, in combination with another impairment, may be treated as meeting the Listings. 67 FR 57859.

Plaintiff bears the burden of proving that she meets or equals a Listing. Burress v. Secretary, 835 F.2d 139 (6th Cir. 1987). She must present *specific medical information* to satisfy all of the Listing criteria. 20 C.F.R. Sec. 416.925. Listings are to be interpreted very strictly, and the plaintiff must establish the existence of all elements of the Listing. Foster v. Halter, 279 F.3d 348 (6th Cir. 2001), Hale v. Secretary, 816 F.2d 1078 (6th Cir. 1987). She cannot show that she "equals" a Listing simply by showing overall functional impact of her condition; "equivalence" is a test used only when the claimant's impairment is unlisted, and it is satisfied only by presenting medical evidence of findings "equal in severity to *all* the criteria for the one most similar impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990).

Ms. Best argues that proper consideration of her obesity would have resulted in a determination that she met Listing 1.02, "Major dysfunction of a joint." That Listing requires a showing of "inability to ambulate effectively." Effective ambulation cannot be demonstrated

simply by showing ability to walk about one's home.  To ambulate effectively, the person must be able to sustain "a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living."  Listings, 1.00 B.2.b.  However, the record does not include the required *specific medical information* to establish such inability ambulate ineffectively.  Indeed, in March of 2002, plaintiff's treating physician noted that she was in a walking program.  Tr. 139.

In support of her claim, Ms. Best points to her own testimony, including her assertion of inability to walk across the street without stopping to rest.  However, the ALJ explicitly addressed her testimony and found that it was not entirely credible.  He supported that determination with references to her own testimony regarding her activities, with references to the consultative examinations, and with his observations of her at the hearing.  An "ALJ may distrust a claimant's allegations of disabling symptomatology if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."  Moon v. Sullivan, 923 F.2d 1175, 1183 (6th Cir. 1990).  Stated another way, "discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence."  Walters v. Commissioner, 127 F.3d 525, 532 (6th Cir. 1997).  The Court finds no error in the ALJ's credibility evaluation.

Ms. Best argues that the ALJ erred in failing to call a medical advisor to testify regarding the combined effect of her obesity with her other impairments.  However, the record does not reflect a need for such testimony.  The significance of finding an impairment "severe" or "non-severe" is whether the examination of the claimant's circumstances is taken to the next step in the sequential analysis.  If any impairment is found severe, the analysis is taken to the next step,

which is what occurred in this case. The record here includes medical evidence regarding functional limitations; it is irrelevant whether those limitations are produced by her obesity alone or by her obesity in combination with other problems.

Ms. Best next contends that the ALJ erred in evaluating her depression and anxiety. Listing 12.04 B. requires a showing of "marked" limitation in two of three areas of functioning, i.e., activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace. The ALJ found only moderate difficulties as to all three of these areas. Tr. 17. Ms. Best argues that such a conclusion could only be reached by discounting the opinion of the examining consulting, Dr. Klem, and adopting the opinion of the non-examining physician who reviewed the file. Dr. Klem opined that she could be expected to withdraw under stress, such that her ability to respond to pressures normally found in a day to day work setting "is likely poor to fair." Tr. 99. While Ms. Best appears to recognize that this falls short of evidence of "marked" limitation in *two* of the three categories, she contends that a finding of "poor to fair functioning" in daily work settings could have changed the vocational expert's opinion.

The portion of the vocational expert's testimony to which Ms. Best refers is as follows:

Q. Mr. Harpool, if a hypothetical worker's stress tolerance kind of vacillates between poor and fair, poor meaning no useful ability, fair meaning limited but not totally precluded – I guess what I'm wondering is what part of a day can we have poor and still maintain employment?

A. Probably none.

Q. None? I realize everybody –

A. If it happened every day.

Q. – lapses from time to time. Okay. If it's poor an hour a day every day?

A. Meaning the person would have to take an unscheduled break or leave the –

4

>       Q.  Correct.
>
>       A.  – workplace for an hour, then they'd be terminated normally.

Tr. 347-348.

The primary difficulty with Ms. Best's argument is that there is no support in the record for the notion that she would need to take a 30 to 60 minute break every day. Dr. Klem's opinion is readily amenable to the interpretation that her ability to handle work stresses is impaired, such that she would need to have a low stress position. That is precisely what the ALJ asked the vocational expert to assume. Medical evidence supported the findings of the ALJ. The Court finds no error.

Finally, Ms. Best argues that the hypothetical questions presented to the vocational expert were incomplete. First, she states that the VE agreed that a restricting on bending would prelude performance of the identified jobs. With all due respect, the Court believes that in recounting the essence of the vocational expert's testimony, counsel may have overstated the matter. Asked to assume that the plaintiff could not bend from a standing position, and further asked to assume that she was standing and could not reach the work station, the VE agreed that she could not perform the jobs. However, those assumptions themselves are unwarranted, given that the jobs identified were sedentary (standing less than two of eight hours, Tr. 346); many of the jobs involved little use of the hands (Tr. 349); and sedentary work involves "no significant bending" (Tr. 349). The Court cannot fault the ALJ for failing to present a hypothetical to account for an essentially imaginary work environment.

Ms. Best also contends that the hypothetical questions were incomplete in failing to include a reference to panic disorder and agoraphobia, both of which were identified by Dr.

Klem's consultive examination. Tr. 98. However, Dr. Klem was quite candid in stating that his inclusion of "panic disorder with agoraphobia" in his analysis was based entirely on Ms. Best's reports to him of episodes of shortness of breath, panic attacks, faintness, rapid heart beat, trembling, profuse sweating, choking sensation, etc. None of Ms. Best's treating physicians' records note her report of any such symptoms, and such symptoms appear inconsistent with her reports of daily activities. The Court finds no error in the ALJ's failure to include "panic disorder with agoraphobia" in his findings of severe impairments or in his hypothetical questions.

      An order in conformity has this day entered.